IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 8, 2021

## HARRY PEARSON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
No. 10-07805        Glenn Ivy Wright, Judge
_____

### No. W2020-01037-CCA-R3-PC
_____

The petitioner, Harry Pearson, appeals the denial of his post-conviction petition, arguing the post-conviction court erred in finding he received the effective assistance of counsel at trial and on appeal. Upon our review of the record, arguments of the parties, and pertinent authorities, we affirm the denial of the petition.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

J. ROSS DYER, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and CAMILLE R. MCMULLEN, JJ., joined.

Chloe P. Hawes and Claiborne Ferguson, Memphis, Tennessee, for the appellant, Harry Pearson.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Senior Assistant Attorney General; Amy P. Weirich, District Attorney General; and Leslie Byrd, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### *Facts and Procedural History*

#### I. Trial

The petitioner, Harry Pearson, was convicted by a Shelby County Criminal Court jury of aggravated robbery and especially aggravated kidnapping, for which he received an effective sentence of thirty years' confinement. On direct appeal, this Court set forth the relevant facts as follows:

A Shelby County grand jury indicted [the petitioner] and the co-defendant, Jeffrey Bensley, for the especially aggravated kidnapping and aggravated robbery of the victim, Steven Moorhead. A jury convicted [the petitioner] of both offenses. The trial court sentenced [the petitioner] to thirty years as a violent offender for especially aggravated kidnapping and twenty years as a multiple offender for aggravated robbery and ordered that the sentences run concurrently with each other.

The State first presented the victim as a witness at trial. The victim had relocated to Memphis on May 1, 2010, and was temporarily living at the Calvary Rescue Mission. [The petitioner] was also a temporary resident at the mission. The victim testified that he and [the petitioner] would eat breakfast together at the shelter. The victim would then drive [the petitioner] around town to buy heroin. The victim would park somewhere so [the petitioner] could "shoot up" in the car. [The petitioner] helped the victim become familiar with Memphis by showing him where he could get food and how he could survive being homeless in the city. [The petitioner] asked the victim to "help [him] out" when the victim received his social security disability check. The victim agreed, thinking that it would be nice to repay [the petitioner] for helping him.

On May 19, 2010, the victim planned to pick up his social security check from the shelter when the mail arrived around 2:00 p.m., cash the check, and give [the petitioner] $100 at the shelter that evening. That morning, the victim encountered the co-defendant at the downtown library. The victim knew the co-defendant through [the petitioner]. The co-defendant told the victim that [the petitioner] was looking for him. Shortly thereafter, the victim saw [the petitioner] on the street. The two men entered the victim's vehicle, and [the petitioner] asked the victim to pick up the co-defendant. The victim drove to the library and picked up the co-defendant. They "killed time" until the victim could receive his check from the shelter. After the victim received his check, the three men went to Ace Cash Express so he could cash it. The victim gave [the petitioner] $100, kept $80 in cash for himself, and deposited the remainder of the check on his debit card. They all left together in the victim's car and drove to the home of the co-defendant's mother to retrieve a tent.

When the three men arrived at the residence, the victim turned off the ignition. [The petitioner] turned around to the co-defendant, who was in the backseat, and asked if he was "ready." [The petitioner] then grabbed the victim's right forearm with both hands, and the co-defendant held a knife and

duct tape. The victim recognized the knife as belonging to [the petitioner]. The victim began to struggle, at which time the co-defendant struck a "glancing blow" with the knife to the victim's collarbone and hit the victim in the face. [The petitioner] then placed the victim in a "choker hold." As he started to lose consciousness, the victim assured [the petitioner] he would cooperate. The victim testified that he wanted to be sure he remained conscious. [The petitioner] "let up a little bit," and the co-defendant taped the victim's legs together and taped his wrists together behind his back. [The petitioner] and the co-defendant then reclined the driver's seat and had the victim slide into the backseat of his car. [The petitioner] sat in the driver's seat, and the co-defendant entered the rear passenger side. He held a knife to the victim's rib cage. The co-defendant then removed the victim's wallet and took his debit card, cash, and cellular telephone.

[The petitioner] drove the victim's car to a nearby store with an automated teller machine ("ATM") and asked the victim for his personal identification number. [The petitioner] entered the store and withdrew $300 from the victim's account using his debit card. The victim overheard [the petitioner] talking on the telephone, making arrangements to purchase heroin. [The petitioner] drove to another location and purchased eleven bags of heroin for $100. [The petitioner] told the victim that the victim should leave Memphis and not return. When the victim did not respond to [the petitioner], [the petitioner] reached from the front seat, "backhanded" the victim, and asked if the victim understood. [The petitioner] then drove to the parking lot of the Bass Pro Shop, turned off the ignition, removed the keys, placed them on the floorboard, and exited the vehicle with the co-defendant. After approximately ten minutes had passed, the victim opened the back seat door, exited, and screamed for help. Individuals in a gold Honda stopped to render aid and tried to remove the duct tape with a key. Another man in a white car arrived and cut the victim free with a knife. One of the individuals summoned the police, who arrived ten to fifteen minutes later.

On cross-examination, the victim admitted he had previously been to the residence of the co-defendant's mother. The victim, [the petitioner], and the co-defendant had gone there to smoke crack cocaine together. The victim denied that he was involved with [the petitioner], the co-defendant, and others in a "boost ring" in which they would steal Red Bull energy drinks from Walmart stores. He also denied that he, [the petitioner], and the co-defendant staged the offenses in question to obtain restitution from the Victim's Compensation Fund. The victim admitted that approximately six months after the incident, he and the co-defendant ate dinner at the same table

at a homeless shelter but stated he was unaware that the co-defendant was seated at that table until after he was seated.

On redirect examination, the victim testified that he wondered whether he was going to live through the ordeal and was concerned that [the petitioner] and the co-defendant would stab him before they left the car.

Teresa Quintero, the driver of the gold Honda, testified that she encountered the victim in the parking lot of the Bass Pro Shop. She observed that he appeared as though he had been in a fight: his hair was messy, his shirt was torn, and he was bleeding. She telephoned 9-1-1 while her son attempted to unwrap the duct tape. Ms. Quintero then located a pair of fingernail clippers in her glove compartment that she used to clip the edge of the tape and remove it. They had just removed the duct tape when police arrived.

Russell Young testified that he was at the Bass Pro Shop on the day in question and observed two men running away from a black car as he was leaving the parking lot. He testified, "[Y]ou could tell by the look on their face[s] or the way they were running [that] something was going on." Mr. Young followed the two men around the corner until they stopped at a Motel 6 and entered the lobby. He then returned to the Bass Pro Shop and asked the victim what had happened. Mr. Young remained on the scene and gave police a statement. He also identified [the petitioner] in court.

James Culpepper, an officer with the Memphis Police Department, responded to the robbery call at the Bass Pro Shop parking lot. When he arrived, he observed that the victim was visibly shaken, frightened, and upset and still bore evidence of duct tape around his wrists and ankles. The victim provided the names of the suspects and a description of what they were wearing. Mr. Young returned to the scene and informed police of the direction in which the suspects fled.

Richard Lunati with the Memphis Police Department responded to the call for assistance at the Bass Pro Shop parking lot. He then proceeded to the Motel 6, the location that Mr. Young had witnessed the suspects enter. Officer Lunati ascertained the room number of the motel room they rented and knocked on the door. He subsequently detained [the petitioner] and the co-defendant, recovering a sum of money during the frisk of [the petitioner].

Lyndi Sugg with the district attorney general's office testified that she was employed as a victim-witness coordinator. She stated that the victim

had not completed the necessary paperwork to obtain compensation as the victim of a crime. Moreover, he would not have been entitled to receive compensation directly; any compensation is sent directly to the provider of medical care in a case involving bodily injury.

Officer David Galloway with the Memphis Police Department Crime Scene Division photographed [the petitioner's] room at the Motel 6. Officers also collected evidence, including a pocket knife, a bag, and some vitamins.

Officer Lee Wiggins of the Memphis Police Department testified that officers obtained a search warrant for the hotel room at the Motel 6. During the search, he recovered the receipt from the motel room and a sum of money. At trial, he identified $180 contained in one envelope and $148 contained in a second envelope that he recovered from the co-defendant and [the petitioner], respectively. Officer Wiggins recovered three empty foil packets that would be used to package heroin, a spoon with drug residue on it, and a plastic bag with marijuana residue in it. He also recovered 2.4 grams of heroin from the co-defendant and 0.66 gram from [the petitioner].

The State rested its case and the defense presented no evidence. Following deliberations, the jury returned verdicts of guilty on both counts of the indictment. The State and defense counsel reached an agreement on [the petitioner's] sentence, recommending to the trial court a sentence of thirty years at 100% for especially aggravated kidnapping and twenty years as a multiple offender at 35% for aggravated robbery. The trial court accepted the agreed-upon sentence.

*State v. Harry Pearson*, No. W2011-02598-CCA-R3-CD, 2012 WL 5830702, at *1-3 (Tenn. Crim. App. Nov. 16, 2012) (footnote omitted).

## II. Post-Conviction Hearing

On January 21, 2014, the petitioner filed a pro se petition for post-conviction relief and an accompanying memorandum in support thereof.[1] After the appointment of counsel, the petitioner filed an amended petition in which he claimed trial counsel was ineffective for many reasons and alleged that "[t]he trial court expressed its bias in its charge to the jury." The post-conviction court appointed new counsel, and the petitioner filed a second

---

[1] The record indicates the post-conviction court treated the petitioner's pro se "Request for Discovery, Inspection, and; Notice of Intent to Use Evidence in Post-Conviction Proceeding" as a timely-filed petition for post-conviction relief.

- 5 -

amended petition for post-conviction relief.  In the second amended petition, the petitioner alleged, in pertinent part, that trial counsel failed to: "effectively cross-examine the alleged victim witness [], even though he made inconsistent statements on the stand"; "impeach several other State witnesses, where he had an opportunity"; "object[] to several instances of prosecutorial misconduct"; and "raise the *White* issue" both at trial and on appeal.[2]  The post-conviction court held an evidentiary hearing to address the allegations during which trial counsel and the petitioner testified.

Trial counsel represented the petitioner at trial and on appeal.  Prior to trial, the petitioner received "an exceptionally high" and "unreasonable offer" of twenty years.  Trial counsel discussed the offer with the petitioner, advised that the petitioner could face consecutive sentences if convicted at trial, and recommended the petitioner accept the offer, noting "the evidence against [the petitioner] . . . was overwhelming . . . [b]ecause basically he had someone who knew him and someone he basically lived with that was testifying against him."  The petitioner, however, rejected the offer.  Trial counsel continued negotiating on the petitioner's behalf and even tried to convince the petitioner to agree to a sentence of ten or twelve years on the day of trial with the hope that the prosecutor would accept it.  The petitioner again refused and told trial counsel, "I wouldn't even take 10 years today if they offered."  After being convicted, trial counsel was successful in securing concurrent sentences for the petitioner which resulted in an effective thirty-year sentence.

Regarding his defense strategy, trial counsel hired an investigator and attempted to research the victim's criminal history in an effort to suggest the victim participated in scams with the petitioner.  More specifically, trial counsel attempted to show the victim "had consented to being kidnapped and robbed" as part of "a scam to fleece the victim compensation fund."  However, when trial counsel questioned the victim regarding his participation in a scam, which involved stealing groceries from Kroger, the victim "pled the Fifth on the stand."  In doing so, trial counsel believed he successfully impeached the victim, noting "[t]hat -- by him pleading the Fifth on the stand it kind of had the effect of, you know, impeaching him with being prior bad acts.  I mean, that had the intended effect that we wanted."

Regarding the petitioner's criminal history, trial counsel filed a "609 motion" to exclude three prior drug convictions.  However, after a hearing, the trial court ruled that the petitioner's prior convictions would be admissible if he testified during trial as the convictions were considered crimes of dishonesty.

---

[2] 362 S.W.3d 559, 578 (Tenn. 2012) (instructing that "trial courts must ensure that juries return kidnapping convictions only in those instances in which the victim's removal or confinement exceeds that which is necessary to accomplish the accompanying felony").

Trial counsel did not request any specific jury instructions and did not object to the jury instructions during trial. Trial counsel admitted the jury did not have the opportunity to review the case under the *White* instruction as "*White* had not been decided at that point in time." Regardless, trial counsel did not believe he could have successfully dismissed the especially aggravated kidnapping charge based upon the facts of the case. Trial counsel explained:

> And then in recollection -- in my understanding of the facts of the case is that they kidnapped . . . [the victim] and drove him out into the county where they then got his debit card from him.
>
> They drove him back in the city; went to an ATM machine and they got the money out. So, at that point in time the aggravated robbery had been completed. And then they drove him somewhere else where he was bound and they left him confined in the vehicle, bound in the back seat of the car.

Trial counsel acknowledged the *White* opinion was issued while the petitioner's direct appeal was pending. However, as noted above, trial counsel did not amend the motion for a new trial or appellate brief after the *White* opinion was issued because he was "of the opinion there was a kidnapping when they grabbed [the victim] off the street and drove him out in the country" and "there was a kidnapping after the ATM withdraw." Trial counsel noted this Court reviewed the *White* issue under plain error on direct appeal, and found no error. The trial court also stated that even under a lesser standard, he did not believe the petitioner would be entitled to relief based upon the facts of the case.

The petitioner also testified, stating trial counsel "tried to feed" him the twenty-year offer but that he would not have even accepted a fifteen-year offer. Instead, the petitioner told trial counsel he would "take a 10-year plea offer at 35 percent because [he] was a Range 2 offender." The petitioner stated he now knows the crimes for which he was charged and convicted carry 85% service requirements.

The petitioner admitted to having three prior convictions for purchasing heroin. The petitioner denied discussing these convictions with trial counsel and stated they did not discuss whether he would testify or not until after losing the 609 hearing. The petitioner claimed he would have testified had the trial court ruled his prior drug convictions were inadmissible.

The petitioner described the victim as a drifter and did not believe trial counsel or the investigator looked into the victim's criminal record, suggesting they "only looked at my case briefly as to run it through with no discussion at all." The petitioner stated trial

counsel was "ready for [him to] cop out and to take a plea bargain for something I didn't feel was fair, which I know I didn't commit those crimes so I wasn't gone (sic) take it."

After its review, the post-conviction court denied the petition, both orally and in writing, and the petitioner timely appealed.

*Analysis*

On appeal, the petitioner contends the post-conviction court erred in finding he received the effective assistance of counsel. Specifically, the petitioner argues trial counsel was ineffective for failing to raise a *White* jury instruction issue at trial and on appeal. The State submits the petitioner has failed to meet the burden required of him and, therefore, is not entitled to relief. Upon our review of the record and the applicable law, we affirm the ruling of the post-conviction court.

The petitioner bears the burden of proving his post-conviction factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). The findings of fact established at a post-conviction evidentiary hearing are conclusive on appeal unless the evidence preponderates against them. *Tidwell v. State*, 922 S.W.2d 497, 500 (Tenn. 1996). This Court will not reweigh or reevaluate evidence of purely factual issues. *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997). However, appellate review of a trial court's application of the law to the facts is de novo, with no presumption of correctness. *See Ruff v. State*, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel presents mixed questions of fact and law. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). Thus, this Court reviews the petitioner's post-conviction allegations de novo, affording a presumption of correctness only to the post-conviction court's findings of fact. *Id.*; *Burns v. State*, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceedings. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting the standard for determining ineffective assistance of counsel applied in federal cases is also applied in Tennessee). The *Strickland* standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's

errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687. In order for a post-conviction petitioner to succeed, both prongs of the *Strickland* test must be satisfied. *Id.* Thus, courts are not required to even "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.*; *see also Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (stating that "a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

A petitioner proves a deficiency by showing "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the *Strickland* test is satisfied when the petitioner shows there is a reasonable probability, or "a probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. However, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

The issues presented in this appeal concern the standard adopted by our supreme court in *State v. White*, 362 S.W.3d 559, 578 (Tenn. 2012). In *White*, our supreme court held that "trial courts must ensure that juries return kidnapping convictions only in those instances in which the victim's removal or confinement exceeds that which is necessary to accomplish the accompanying felony." *Id.* Thus, "[i]nstructions should be designed to effectuate the intent of the General Assembly to criminalize only those instances in which the removal or confinement of a victim is independently significant from an accompanying felony, such as rape or robbery." *Id.* The supreme court stated:

> When jurors are called upon to determine whether the State has proven beyond a reasonable doubt the elements of kidnapping, aggravated kidnapping, or especially aggravated kidnapping, trial courts should specifically require a determination of whether the removal or confinement is, in essence, incidental to the accompanying felony or, in the alternative, is significant enough, standing alone, to support a conviction.

*Id.* "In our view, an instruction of this nature is necessary in order to assure that juries properly afford constitutional due process protections to those on trial for kidnapping and an accompanying felony." *Id.*

Here, the petitioner asserts trial counsel was ineffective for failing to request the *White* instruction at trial. However, as noted by the State, the petitioner's trial occurred in 2011, and our supreme court did not issue the *White* opinion until March 2012. *Id.* at 559. As such, trial counsel could not have requested the *White* instruction at the time of the petitioner's trial and cannot be found to have been deficient for failing to do so. *See Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994) (finding trial counsel "could not have been deficient by his failure to anticipate the subsequent rulings of the United States Supreme Court" regarding jury selection and jury instruction issues that were not proscribed at the time of trial). Accordingly, we find no merit to this claim of ineffectiveness.

Next, the petitioner asserts trial counsel was ineffective for failing to raise the *White* issue on direct appeal, arguing he was prejudiced as a result because "a reasonable probability exists that, had the jury been properly instructed on the *White* issue, the jury would have rendered a more favorable judgment." The State submits the petitioner is not entitled to relief because "the petitioner's conviction of especially aggravated kidnapping was not incidental to the aggravated robbery and a *White* instruction therefore would not have changed the outcome of the proceedings." Upon our review, we agree with the State.

The record indicates trial counsel did not raise a *White* issue on appeal because he did not believe it would have been successful. Despite trial counsel's failure to raise the issue on direct appeal, this Court reviewed the *White* issue under the doctrine of plain error, stating:

> In this case, the trial court instructed the jury with respect to especially aggravated kidnapping using the previous pattern jury instruction. Thus, the trial court erred in its charge to the jury. However, because [the petitioner] did not raise a *White* issue, we must analyze this issue under our plain error standard of review. Our supreme court formally adopted the following test for reviewing claims of plain error:
>
>> The Court of Criminal Appeals has developed five factors to consider when deciding whether an error constitutes "plain error" in the absence of an objection at trial: "(a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been

adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is 'necessary to do substantial justice.'" *State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). All five factors must be established by the record before a court will find plain error. *Id.* Complete consideration of all the factors is not necessary when clearly at least one of the factors cannot be established by the record.

Based on our review, we determine that consideration of this issue under plain error review is not "necessary to do substantial justice." The jury convicted [the petitioner] of especially aggravated kidnapping and aggravated robbery. The proof established that [the petitioner] and the co-defendant lured the victim to the residence of the co-defendant's mother under the guise of picking up a tent. While in the driveway of the residence, [the petitioner] and the co-defendant bound the victim with duct tape, threatened him with a knife, struck the victim's collarbone with a knife, and hit the victim in the face. They stole the victim's cellular telephone and wallet, which contained his debit card and cash. [The petitioner] drove to an ATM machine and demanded the victim's personal identification number. After driving around Memphis, they abandoned the victim in his vehicle while he was still bound with duct tape. Based on the facts of this case, the failure to charge the jury that confinement of the victim for the especially aggravated kidnapping must not have been essentially incidental to the aggravated robbery is harmless beyond a reasonable doubt. Accordingly, [the petitioner's] dual convictions of especially aggravated kidnapping and aggravated robbery are affirmed.

*Harry Pearson*, 2012 WL 5830702, at *6 (citations omitted).

In denying relief as to the *White* issue, the post-conviction court concluded "[t]his issue has been determined," and we agree. *See* Tenn. Code Ann. § 40-30-106(f) ("Upon receipt of a petition in proper form, or upon receipt of an amended petition, the court shall examine the allegations of fact in the petition. If the facts alleged, taken as true, fail to show that the petitioner is entitled to relief or fail to show that the claims for relief have not been waived or previously determined, the petition shall be dismissed."). As demonstrated above, it is undisputed that trial counsel erred by failing to raise the *White* issue on direct appeal. However, this Court analyzed the issue and determined the trial court's failure to charge the jury in accordance with *White* was harmless because the facts demonstrated that the victim's confinement was not incidental to the aggravated robbery.

The post-conviction court also reviewed the petitioner's dual convictions and concluded the especially aggravated kidnapping was "greater than incidental" to the aggravated robbery committed by the petitioner, stating "the [petitioner] robbed the victim at gun point, bound him with tape and drove him to several locations around town while obtaining money." Furthermore, trial counsel testified that he did not raise the *White* issue on appeal because of his belief that the kidnapping was not incidental to the robbery and occurred both "when [the petitioner and the co-defendant] grabbed [the victim] off the street and drove him out in the country" and "after the ATM withdraw." Additionally, this Court determined the evidence was sufficient to support the petitioner's conviction for especially aggravated kidnapping:

> The evidence, viewed in the light most favorable to the State, demonstrates that the victim willingly transported [the petitioner] and the co-defendant to the residence of the codefendant's mother. However, once there, [the petitioner] and the co-defendant forcibly restrained the victim, threatened him with and cut him with a knife, and bound his wrists and ankles with duct tape. After robbing him, [the petitioner] drove the victim's car, with the victim still inside, to another location to purchase drugs and to a third location to use the victim's debit card. The jury's verdict of guilty credits the State's proof. We conclude that the evidence was sufficient to establish that [the petitioner] confined the victim unlawfully, substantially interfered with his liberty, and accomplished the act by use of a deadly weapon.

*Harry Pearson*, 2012 WL 5830702, at *4.

Though the petitioner argues he was prejudiced by trial counsel's failure to raise the *White* issue on appeal, he has failed to provide any proof supporting this claim. Instead, the record indicates trial counsel believed the petitioner's convictions of especially aggravated kidnapping and aggravated robbery were separate and distinct crimes, and the same was found by this Court on direct appeal and by the post-conviction court. Therefore, the petitioner has not established a reasonable probability that, had trial counsel raised the *White* issue on direct appeal, the outcome of the proceedings would have been different. *Strickland*, 466 U.S. at 694. The petitioner is not entitled to relief.

### *Conclusion*

Based upon the foregoing authorities and reasoning, the judgment of the post-conviction court is affirmed.

_____
J. ROSS DYER, JUDGE